209 So.2d 849

Robert W. BRUMLOW

v.

Kathleen P. BRUMLOW.

8 Div. 203.

Supreme Court of Alabama.

April 11, 1968.

David H. Culver, of Culver & Miller, Huntsville, for appellant.

Cloud, Berry & Ables, Huntsville, for appellee.

COLEMAN, Justice.

The husband appeals from a decree rendered April 8, 1965, wherein the court denied the husband's cross-petition in which he asked to be relieved from making further monthly payments for support of his former wife.

In the original divorce decree of March 18, 1960, the court had ordered the husband to pay $300.00 per month for support of his former wife and their daughter.

By decree of May 26, 1960, the court reduced the monthly payments to $225.00 per month beginning February 1, 1961.

The record contains four decrees prior to the instant decree, rendered, respectively, on May 26, 1960; January 20, 1961; September 5, 1962; and February 26, 1964. In each of these four decrees, the court held

the husband in contempt for failing to make the payments as ordered.

On September 18, 1964, the former wife filed petition to require the husband to show cause why he should not be held in contempt. She alleged that he was in arrears $2,600.00.

The husband filed answer and cross-petition in which he asked to be relieved from making further payments.

The evidence was heard ore tenus. In the decree of April 8, 1965, here complained of, the court reduced the payments to $150.00 per month.[1]

### 1.

The husband makes nine assignments of error. In his brief, he undertakes to argue in bulk Assignments 1 through 6. In these six assignments, he asserts that the court erred in overruling his objections to certain questions propounded to the husband on cross-examination.

In support of these assignments, the husband appears to argue that the court erred in overruling his objections because a corporation is regarded as an entity separate from the stockholders, and the questions called for evidence " * * * concerning obligations which were clearly shown by the testimony to have been obligations and payments not *his,* but actually obligations and payments made by the corporation for which he worked."

Assignment 1 recites:

"1. The trial court erred in overruling Respondent, Cross-Petitioner's objection

to the following question propounded to the witness, Robert W. Brumlow, the Respondent, Cross-Petitioner, transcript page 171: 'Does this include electricity —what about your telephone?'"

The husband, on direct examination, had testified that, during the previous year, he had been paid a commission of $1,008.00, by E & B Barber Shop, Incorporated; that he owned four shares of the corporation's stock and his second wife owned the other ninety-six shares. On cross-examination, the husband had testified with respect to an automobile he had been driving; that he had bought a house for $17,500.00; and that he was paying approximately $119.00 per month on the house. At this point the following occurred:

"Q Mr. Brumlow, what is the average amount of your heat bill per month?

"A It runs anywhere from nineteen to around twenty-five dollars a month.

"Q What is the average, if you can say?

"A I would say it would average around twenty-four or twenty-five dollars a month.

"Q Does this include electricity—what about your telephone?

"MR. CULVER: We object to this unless he can show he paid it. Immaterial; irrelevant.

"THE COURT: Overruled.

"MR. CULVER: We except.

"Q What is your telephone bill?

1. The decree recites:
"IT IS THEREFORE CONSIDERED, ADJUDGED AND DECREED by the Court that the relief prayed for in the Cross-Petition of Respondent, Robert W. Brumlow, to modify the Decree of this Court of May 26, 1960, is denied except that said Decree of May 26, 1960, is modified to reduce the amount of money to be paid by Robert W. Brumlow to the Register as alimony for Kathleen P. Brumlow, is (sic) $150.00 per month, said sum being due and payable $75.00 on the 1st and $75.00 on the 15th day of each succeeding month hereafter, beginning the 1st day of March, 1965, and continuing thereafter as outlined until further orders of the Court; that the request of Kathleen P. Brumlow for Solicitor's fees be, and is hereby, denied."

"MR. CULVER: We object unless he shows he paid it; immaterial; irrelevant.

"THE COURT: Overruled.

"MR. CULVER: We except.

"A I believe it is around either seven or nine dollars. Per month."

In deciding whether to reduce or terminate the monthly payments, it seems elementary that the court should know what amounts the husband did pay, or was obligated to pay, each month for living expenses, including heat, electricity, and telephone. We think the former wife was entitled to show the amounts paid, although actual payment may have been made by the corporation for the benefit of the husband.

Proposition of Law II set out in appellant's brief is:

"But the legal fiction of separate corporate entity should not be so extended 'as to enable the corporation to become a vehicle to evade a just responsibility'.";

citing Forest Hill Corporation v. Latter & Blum, 249 Ala. 23, 27, 29 So.2d 298.

The husband had already testified on direct examination that he had, on April 1, 1964, paid to the court for support of his former wife and daughter the sum of $2,550.00, and that he had obtained the money by increasing the mortgage on the E & B Barber Shop, Parkway City.

Later, on cross-examination, the husband testified as follows:

"Q Do you live out of the corporation?

"A Well, I guess some part of it; I guess. * * *"

The husband testified that he is secretary of the corporation. In view of the husband's connection with the corporation, the mortgaging of its assets to obtain funds to pay his support payments, and the use of its assets to pay his living expenses, we are not persuaded that the court erred in over-

ruling objections to the questions propounded to him in Assignments 1 through 6. The ground of objection now urged by appellant, that the questions called for evidence showing payments for appellant's living expenses which the corporation may have made, is not well taken.

2.

Assignment 4 recites:

"4. The trial court erred in overruling Respondent, Cross-Petitioner's objection to the following question propounded to the witness, Robert W. Brumlow Respondent, Cross-Petitioner, transcript page 179: 'Did you pay any money for a fine? Did you pay any fine—1964?'"

The following appears on transcript pages 179 and 180:

"Q Were you arrested in 1964 any?

"MR. CULVER: Objection; immaterial and irrelevant.

"THE COURT: Sustained.

"Q Did you pay any money for a fine? Did you pay any fines—1964?

"MR. CULVER: Objection; immaterial and irrelevant.

"MR. CLOUD: You have shown, supposedly, what he makes; we want to find what he paid out this money for.

"THE COURT: Overruled.

"MR. CULVER: We except.

"A No, sir."

Appellant asserts that the court erred because a witness may not be cross-examined as to specific acts of misconduct by him which have no relevancy except to show that the witness is a person of bad character, citing The Law of Evidence in Alabama, McElroy, Vol. 1, page 331, Sec. 140.01(8).

The court did not err for two reasons. First, the evidence sought was rele-

vant to show an item for which appellant spent his money in 1964, and thus shed light on his financial condition. Second, the witness answered in the negative, and, therefore, the evidence elicited did not tend to show that he was a person of bad character. The answer to the question was favorable to appellant, and, if error intervened, it was without injury to him. Thaggard v. Vafes, 218 Ala. 609, 612, 119 So. 647.

3.

In Assignment 7, appellant asserts that the court erred in sustaining objection to the introduction into evidence of a paper which purports to be a statement of the receipts and disbursements of the corporation from January 1, 1964, to September 30, 1964. The statement shows gross receipts amounting to $82,364.60, and expenses amounting to $78,811.28.

Prior to the noon recess, appellant had testified that the gross for last year was $91,000.00; but on further examination he said he meant $9,100.00. After the noon recess, he testified that he had been nervous and mixed up before the recess, and that the correct figure was $82,364.60.

Appellant undertook to lay a predicate for introduction of the paper which contains the statement. He testified that his present wife kept the books of the corporation; that he did not direct an accounting to work up a profit and loss statement; that, as far as he knows, Miss Curtis made up the statement; that the figures on the statement are the same figures that were on the book that his wife " * * * showed me in the book that I know of"; that " * * * that shows every thing—every barber, that every nickel was took in, and every penny was took out." He testified:

"Q Can you tell the Court what the net earnings, that is, the net income, for E & B Barber Shops, Incorporated, now that's all the shops, for the period of January 1, 1964 until September the 30th, 1964, with this figure you have just mentioned—eighty-two thousand, three hundred sixty-four dollars and sixty cents, what was the gross income—what was the net income, is what I'm asking.

"A Is that from January the 1st to September?

"Q Yes, sir, September the 30th.

"A I cannot tell you.

"Q Well, do you know what it was for the entire year 1964?

"A Yes, sir.

"Q What?

"A Eighty-two thousand, * * *.

"Q I said net income—not gross.

"A The net pay of salaries?

"Q No, sir, the net income—what E & B Barber Shop, Incorporated, netted from this figure of eighty-two thousand, three hundred sixty-four dollars and sixty cents.

"A The gross intake or what we netted?

"Q What you made, yes.

"A What I made?

"Q What the corporation made, yes.

"A Well, we didn't make anything. We paid the bills."

He testified that he was familiar with the statement; that the commissions paid to barbers was a little over $60,000.00; that the rent paid was nine thousand, eight hundred and some odd dollars; that the depreciation was something over $3,000.00; that the payroll taxes were around $1,800.00 or a little better, and to like effect as to other items shown on the statement. The court sustained appellee's objection to admitting the statement into evidence.

It is clear that the paper is not a book of original entry or a record made in the regular course of business but, according to appellant's testimony, the statement is a copy

of figures taken from some book of account his wife had shown him. He is not positive who made up the statement.

We do not understand that appellant now contends that the statement was a book of account or business record which would be admissible to prove the correctness of the account under §§ 414, 415, Title 7, Code 1940. Appellant now contends that, after he had testified as to the correctness of the various items shown on the statement, it was admissible to aid the court's recollection of his testimony under the rule stated by this court as follows:

"* * * But he proposed to introduce the paper in evidence, not as evidence of the correctness of the account, but to aid the jury in recollecting his testimony as to what the correct items of account were, he having testified, from independent recollection, to the correctness of each item on the memorandum. It has been several times decided by this court that it is not error to allow an account to go to the jury under such circumstances, and for such a purpose.—Hirschfelder v. Levy, 69 Ala. 351; Mooney v. Hough, 84 Ala. 80, 4 So. 19; Snodgrass v. Coulson, 90 Ala. 347, 7 So. 736. The question now is, whether it is error to refuse so to allow it. The writer is inclined to the opinion that the admission to the jury of such memoranda, under the circumstances of this case, for the purpose mentioned, should be left to the sound discretion of the trial court; but the other members of the court think, and we so hold, that it is a valuable right of the party offering it, the denial of which is a reversible error." Foster & Rudder v. Smith, 104 Ala. 248, 252, 16 So. 61, 62.

The offer made by the instant appellant is as follows:

"At this time we will offer this into evidence, Your Honor, as statement of income of E & B Barber Shops, Incorporated for the period of time January 1, 1964 through September 30th, 1964, which the witness has just testified as to the figures contained thereon."

■ We do not think appellant offered the statement merely as a memorandum to aid the court's recollection of appellant's testimony, and hold that the court did not err in sustaining the objection.

4.

The husband asserts that the decree of April 8, 1965, is due to be reversed because, under the evidence, the amount of his monthly support payments ought to be further reduced or his obligation to support the former wife ought to be terminated.

■. There is no point of law at issue on this question. Where a decree for permanent alimony is not for a lump sum, nor otherwise indicative of a division of property merely, but is a monthly allowance for the wife's maintenance running into the indefinite future, and payable, if need be, from the future earnings of the husband, the court has power to modify the same because of changed conditions of the parties, whether such power be expressly reserved or not. Aiken v. Aiken, 221 Ala. 67, 68, 127 So. 819; Whitt v. Whitt, 276 Ala. 685, 687, 166 So.2d 413. See numerous cases cited in 8 Ala.Digest, Divorce ⊕245(2).

■ In the instant case, with respect to modification, that is, reduction or termination of the monthly payments, the husband is the movant, and, therefore, has the burden to show that the financial condition of the parties has changed since the original decree and that the change entitles him to the relief sought.

The evidence is not entirely clear as to precisely what the husband's income is at the time of trial. He appears to contend that he earned only $1,008.00 during the preceding year, but he testified to effect that he and his family lived "out of the corporation" to a large extent. The corporation grossed over $80,000.00 in nine

months, according to the husband's testimony. The husband is a barber, but his most profitable activity appears to have been management of the barber shops operated by the corporation.

The former wife was earning about $2,-400.00 a year at time of. trial. She was paying on a mortgage on her house, had recently suffered on operation for varicose veins and also had had a heart attack. She was still under the care of a doctor.

The burden of proof is on the husband to show justification for the relief he seeks. We are of opinion that the court was not bound to find on this record that the husband had carried this burden. The evidence was heard ore tenus and we are not persuaded that the decree was plainly and palpably wrong.

Since error has not been shown, the decree is affirmed.

Affirmed.

LIVINGSTON, C. J., and LAWSON and HARWOOD, JJ., concur.